**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Shaun Chase Escobedo,<br><br>           Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>           Respondents. | CIV-16-00044-PHX-PGR (JZB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE PAUL G. ROSENBLATT, SENIOR UNITED STATES DISTRICT JUDGE:

Petitioner Shaun Chase Escobedo, who is currently confined in an Arizona State Prison, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.)

**I. BACKGROUND**

    **a. FACTUAL BACKGROUND AND TRIAL PROCEEDINGS**

The Presentence Report summarized the facts as follows:

> On January 24, 2009, the defendant robbed three convenience store clerks at gunpoint within a forty-five-minute period. The first robbery occurred at an AM/PM store (count one) when the defendant approached cashier Jorge Rodriguez Valencia, pointed a handgun at him, and demanded all the money in the cash register. Mr. Valencia opened the register and gave the defendant approximately $199.00 in cash. As the defendant left the store, he pointed the gun to the floor and fired it.

> The next armed robbery occurred at a Circle K convenience store where the defendant approached cashier Chris Glazier, pointed a handgun at him, and demanded he give him all the money in the cash register. Mr. Glazier opened the cash register and stepped back to allow the defendant access; however the defendant yelled, "Hand me the fucking money!" When Mr. Glazier did not automatically comply, the defendant pulled the slide on the handgun to chamber a round and again demanded the money. Mr. Glazier gave the defendant between $30.00 and $40.00. As he left the store, the defendant pointed the gun at a customer who was entering the store, and then fled in a truck.
>
> The defendant committed his third armed robbery at a Valero convenience store where he approached cashier John Fitzpatrick, pointed the handgun at him, and demanded all the money from the cash drawer. Mr. Fitzpatrick opened the cash register and stood back to allow access. The defendant took $167.00 from the register and fled in a pickup truck.
>
> All three robberies were recorded on store surveillance tape. The following evening, police responded to another gas station where the defendant was detained for panhandling. The defendant, who was wearing the same clothing as the previous day, admitted his involvement in all three robberies, despite the fact he could not recall the events of the evening because he was extremely intoxicated. He told police he traded the handgun he used to commit the robberies (which records showed had been reported stolen) for $30.00 worth of cocaine.

(Doc. 9-1, Ex. B, at 8.)

On February 2, 2009, a grand jury indicted Petitioner for three counts of Armed Robbery and one count of Unlawful Discharge of a Firearm. (Doc. 9-1, Ex. A, at 3-4.)

On June 15, 2009, Petitioner pleaded guilty to two counts of Armed Robbery, with a cap of 30 years imprisonment and no agreements regarding concurrency. (Doc. 9-1, Ex. C, at 16.) The agreement contained the following appeal waiver:

> Unless this plea is rejected by the court or withdrawn by either party, the Defendant hereby waives and gives up any and all motions, defenses, objections, or requests which he has made or raised, or could assert hereafter, to the court's entry of judgment against him and imposition of a sentence upon him consistent with this agreement. By entering this agreement, the Defendant further waives and gives up the right to appeal.

(*Id.* at 17.)

On September 16, 2009, the court sentenced Petitioner to presumptive terms of

10.5 years of imprisonment to run consecutively. (Doc. 9-1, Ex. E, at 23-24.)

### b. PETITION FOR POST-CONVICTION RELIEF

On August 18, 2010, Petitioner filed a Rule 32 petition for post-conviction relief, which the Maricopa County Superior Court denied on January 5, 2011. (Doc. 6 at 1; Doc. 1 at 6.)

On May 3, 2011, Petitioner filed a petition for review, which was denied by the Arizona Court of Appeals on February 27, 2013. (Doc. 6 at 1; Doc. 1 at 9.) On August 29, 2014, Petitioner filed a petition for review with the Arizona Supreme Court, which was denied on November 24, 2014. (Doc. 6 at 1; Doc. 1 at 12.)

### c. FEDERAL PETITION FOR WRIT OF HABEAS CORPUS

On December 16, 2015, Petitioner mailed the instant Petition for Writ of Habeas Corpus. (Doc. 1.) Petitioner asserts two grounds for relief, which allege that counsel was ineffective at sentencing for failing to argue for concurrent sentences and failing to present mitigation evidence. (Doc. 1 at 13-14.)

On April 15, 2016, Respondents filed an Answer. (Doc. 9.) Petitioner did not file a Reply.

## II. APPLICATION OF LAW

The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for Habeas Corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2244.

### a. THE PETITION

The AEDPA imposes a one-year limitation period, which begins to run "from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner's PCR proceedings concluded on November 24, 2014 when the Arizona Supreme Court denied review. (Doc. 1 at 12.) Petitioner's conviction thus became final 90 days later on February 24, 2015, when the period for filing a petition for writ of

certiorari with the United States Supreme Court expired. Petitioner mailed the instant Petition on December 16, 2015. Therefore, the Petition is timely.

Petitioner raises two grounds in the Petition for Writ of Habeas Corpus: (1) his Sixth and Fourteenth Amendment rights were violated because his counsel provided ineffective assistance during sentencing when counsel failed to argue for concurrent sentences; and, (2) his Sixth and Fourteenth Amendment rights were violated because his counsel provided ineffective assistance when counsel failed to "argue issues raised by a mitigation expert and present the expert as a witness for testimony at sentencing as requested." (Doc. 1.) The Court analyzes each claim below.

### b. LAW

#### i. Procedural Default

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless a petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim").

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which his claim is based. *See Baldwin*, 541 U.S. at 33. A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 31–32. Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th

Cir. 2005) (internal citations omitted).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights. *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991), *superseded in part by*, 28 U.S.C. § 2255(b). Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims. *See Coleman*, 501 at 731-32.

### ii. Merits Review

If a habeas petition includes a claim that was "adjudicated on the merits in State court proceedings," federal court review is limited by § 2254(d). Under § 2254(d)(1), a federal court cannot grant habeas relief unless the petitioner shows: (1) that the state court's decision "was contrary to" federal law as clearly established in the holdings of the United States Supreme Court at the time of the state court decision, *Greene v. Fisher*, 132 S.Ct. 38, 43 (2011); (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d)(2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011). This standard is "difficult to meet." *Harrington*, 562 U.S. at 102. It is also a "highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted).

A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 14 (2003) (citations omitted).

A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a

particular case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 131 S.Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

When a state court decision is deemed to be "contrary to" or an "unreasonable application of" clearly established federal law, a petitioner is not entitled to habeas corpus relief unless the erroneous state court ruling also resulted in actual prejudice as defined in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

## III. DISCUSSION

### a. PRELIMINARY ISSUES

Respondents argue the Petitioner's guilty plea precludes habeas review. (Doc. 9 at 5.) Respondents cites to *United States v. Broce*, 488 U.S. 563, 574 (1989) (holding that double jeopardy challenge was waived by guilty plea). But *Broce* does not stand for the proposition that a guilty plea waives all claims of ineffective assistance of counsel at sentencing. Instead, as quoted by Respondents, *Broce* states that a *plea of guilty* may not be collaterally attacked. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). *See also United States v. Pruitt*, 32 F.3d 431 (9th Cir. 1994) (noting that the "plea agreement entered into by the government and Pruitt did not waive Pruitt's right to bring a § 2255 motion alleging ineffective assistance of counsel").

Respondents argue Petitioner waived his appeal and habeas rights under the terms of his plea agreement. (Doc. 9 at 6.) Respondents argue the "language of the waiver here clearly and unambiguously precludes the instant habeas petition." (*Id*.) Respondents cite to *United States v. Nunez*, 223 F.3d 956, 959 (9th Cir. 2000) and argue it holds "that a defendant waives the right to argue ineffective assistance of counsel at sentencing when he waives the right to appeal the sentence." But the next paragraph in *Nunez* adds that a

"general waiver of appeal in a plea agreement 'does not waive the right to bring a § 2255 motion unless it does so expressly.'" *Id.* citing *Pruitt*, 32 F.3d at 433. The Court in *Nunez* found that "[t]here is no indication that Nunez expressly waived the right to argue ineffective assistance of counsel in a section 2255 motion." *Id.* Similarly here, the plea agreement waiver states only that Petitioner "further waives and gives up the right to *appeal*." (Doc. 9 at 5, quoting plea agreement) (emphasis added).

Also, the State did not argue that the appeal waiver applied to Petitioner's claims in his PCR proceeding, but instead argued "Defendant has failed to present a material question of law or fact which would entitle him to relief in post-conviction proceedings." (Doc. 11-1, Ex. C, at 30.) The "[f]ailure to set forth an affirmative defense in an answer may be treated as a waiver of the defense." *Day v. McDonough*, 547 U.S. 198, 209-11 (2006); *United States v. Barron*, 172 F.3d 1153, 1156 (9th Cir. 1999) (en banc). The Court does not find that Petitioner's claims are precluded.

### b. EXHAUSTION

Respondents argue that "Petitioner has never raised his claim of ineffective assistance of counsel asserted in Ground 1 to any state court." But Petitioner's claims here mirror verbatim the claims in the PCR petition. In his PCR proceeding, Petitioner alleged that "[c]ounsel provided ineffective assistance at sentencing in violation of the Sixth and Fourteenth Amendments to the United States Constitution when counsel failed to argue that the sentences issued to the Petitioner should have been concurrent." (Doc. 11-1, Ex. C, at 26.) This is precisely the claim raised by Petitioner in the Petition. (Doc. 1 at 13.)[1] Ground Two similarly matches the PCR allegation.

### c. GROUND ONE

Petitioner's claim in Ground One fails on the merits. Petitioner's counsel at sentencing spoke on Defendant's behalf, and his comments are contained in four pages of the sentencing transcript. (Doc. 11-1, Ex. A, at 8-11.) In his concluding request,

---

[1] The trial court did not address this claim when it denied post-conviction relief, which may explain Respondents' response. (Doc. 1 at 7.)

7

Petitioner's counsel stated that "accordingly, we will ask the Court to impose concurrent sentences in this matter, and Mr. Escobedo will agree to pay the $202.20 in restitution, and we will ask for presentence incarceration credit." (Doc. 11-1 at 11.) Petitioner's straightforward claim is belied by the clear evidence of the sentencing transcript.

### d. GROUND TWO

Petitioner's claim in Ground Two fails because Petitioner does not establish that the state court ruling is contrary to clearly established law. Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim, Petitioner must show: (1) deficient performance—counsel's representation fell below the objective standard for reasonableness; and (2) prejudice—there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88. "When the claim at issue is one for ineffective assistance of counsel, moreover, AEDPA review is doubly deferential . . . because counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . [and] federal courts are to afford both the state court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quotations and citations omitted).

Regarding this claim, the trial court ruled:

> Defendant claims that his counsel was ineffective for not presenting live testimony regarding mitigating evidence. The Court notes that defense counsel did use the services of a mitigation specialist who prepared a memorandum that specifically laid out the mitigating factors that existed, defense counsel also gave oral argument to the Court regarding mitigation and presentence report contained a discussion of mitigation. The use of a mitigation specialist is unusual and beyond what is the usual practice of defense counsel at sentencings in general. Live testimony was not necessary when a report was provided to the Court and supplemented by argument and live testimony would not have made a difference.

(Doc. 1 at 7.)

Petitioner fails to establish counsel was ineffective by failing to call a live witness. First, counsel was not required to submit an expert mitigation report at sentencing. "Counsel has no absolute duty to present mitigating character evidence" at all, *Mitchell v. Kemp*, 762 F.2d 886, 889 (11th Cir.1985), and "trial counsel's failure to present mitigating evidence is not per se ineffective assistance of counsel," *Stevens v. Zant*, 968 F.2d 1076, 1082 (11th Cir. 1992). Also, a live witness may have been cross-examined by the prosecution, resulting in the introduction of negative evidence. *See Foster v. Schomig*, 223, F.3d 626, (7th Cir. 2000) (finding the decision to not call a live mitigation expert was not ineffective because "we have noted before in cases like this one, there is a strong possibility that the defendant's mitigation evidence might turn out to be aggravating."). As the trial court noted, counsel routinely submit reports and argue mitigation rather than call live witnesses. Counsel was not ineffective by failing to present a live witness.

Even if the failure to call the mitigation witness was ineffective, Petitioner has failed to demonstrate prejudice. Petitioner must prove there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The trial court determined live testimony from the witness "would not have made a difference." (Doc. 1 at 7.) The Arizona Court of Appeals considered the trial court ruling and denied review. (Doc. 1 at 9.) Petitioner contends that a live witness would "offer a more compelling point of view than cold records of facts." (Doc. 1 at 14.) Petitioner's conclusory statement is insufficient to establish prejudice. *See Burt v. Titlow*, 134 S.Ct. 10, 17 (2013) ("[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.") (internal quotations and citations omitted).

This Court finds that the state courts' rulings were not contrary to clearly-established law. Accordingly, the Court will recommend that Petitioner's claim as asserted in Ground Two of his habeas petition be denied.

## CONCLUSION

The record is sufficiently developed and the Court does not find that an

evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011); *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010). The Court will therefore recommend that the Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 19th day of December, 2016.

Honorable John Z. Boyle
United States Magistrate Judge